Let's proceed then with 19-1255, a state of Joseph Valverde v. Dodge. Ms. Horn, would you please proceed? Good morning, your honors. My name is Michelle Horn and I represent Sgt. Justin Dodge. Approximately three seconds into an encounter that lasted only six seconds in total, Joseph Valverde pulled a gun out of his waistband as he was being arrested for a serious crime. When Mr. Valverde pulled the gun out, Sgt. Dodge, who was part of the arrest team, made the split-second decision that Mr. Valverde was a threat and shot him dead. This is not a violation of the Fourth Amendment, regardless of whether, as the district court found, Mr. Valverde was complying, or in the process of complying, with an order to put his hands up when he was shot. Nor is it clearly established that under these extremely time-condensed circumstances, an officer could not use deadly force, even if he may have been mistaken as to the level of threat posed by Mr. Valverde's gun. The district court erred in finding otherwise, and Sgt. Dodge is entitled to qualified immunity. For purposes of this appeal, we accept, as we must, that Mr. Valverde was in the process of complying with a police order to put his hands above his head when he was shot. However, the district court failed, excuse me, erred when it failed to apply well-established law that police officers, considering they are forced to make split-second decisions under tense and rapidly evolving circumstances, as these circumstances certainly were, are not always required to be correct in their estimates as to the danger posed by the situation, as long as they are reasonable. Deadly force is justified if a reasonable officer in defendant's position would have probable cause to believe that there was a threat of serious harm to himself or others. A reasonable police officer on the scene would have believed that an individual pulling out a gun from his waistband during the arrest for a serious crime was a threat and that deadly force was a reasonable response. Any other conclusion requires the use of impermissible 20-20 hindsight. And with that, I invite questions from the panel. This is Judge Hart. Let me try to get the timing correct. You talked about three seconds at the outset, and that's the time between when the officers arrived in the van and Mr. Valverde reached in his pocket to get the gun. Is that the three-second period? Correct, Your Honor. That's the three-second period, but there's also a three-second period, another three-second period, which may be confusing, from the time Mr. Valverde pulled the gun out until he was shot and on the ground. Where did you get that three seconds? I looked at the video. It sure didn't seem like it was a second. It was getting the benefit of the doubt to the plaintiff. It was very, very quick, Your Honor. That's the point. Very, very quick. Now, the sound from the helicopter video is when the sound reached the helicopter. Is that right? That is correct, Your Honor. No, actually, no, Your Honor. There are two – I'm sorry. The undercover officer who you can see on the ground there to the right of Mr. Valverde was wired for sound. Okay. So the sound that – Okay. So it came from him is where the sound came from. So the question is the time between when Dodge saw Mr. Valverde with the gun in his hand and when he shot. And that shouldn't be a matter of giving benefit of doubt to anyone. That's shown by the video, is it not? Can't you see how long between when his hand is by his side and when you hear the shot on the microphone that was on the undercover agent? It is the epitome of the split-second decision that is discussed in lethal force cases. It is exactly that, Your Honor. It is a split-second decision that Sergeant Dodge saw the gun and made a decision to shoot. Judge Matheson, do you have any questions? Yes. Getting back to the facts that the district court relied upon, you're not disputing that Mr. Valverde dropped the gun and raised his hands before the shooting itself? Not for purposes of this appeal, Your Honor. No, we're not. And that he did not back up from Sergeant Dodge? Well, I think that factual finding is blatantly disputed by the video, which does show him taking at least one or two steps backwards. All right. What about the finding that he did not point a gun at Sergeant Dodge? Your Honor, any of those facts that are not blatantly contradicted by the video, we are not disputing for purposes of this appeal. What we are saying is that they do not make a difference in the Fourth Amendment analysis that Sergeant Dodge was forced to make a split-second decision and was reasonable in his determination that Joseph Valverde was a threat when he pulled the gun out. Well, was he a threat when he dropped the weapon and his hands were up and visible? Correct, Your Honor, but that is 20 times... No, I'm just asking whether he was a threat when he dropped the gun and his hands were up and visible. Your Honor, at that point in time when he no longer has the gun in his hand, if we could go back in time and dissect the circumstances that way, at that millisecond, no, he was not a threat. However, the point of view has to be from a reasonable officer on the scene, and it was not unreasonable for Sergeant Dodge to believe he was still a threat once he had seen the gun and the quick timing of the... I understand your argument that we're dealing with a compressed time span. Do you have a case with a similarly compressed time span that would give us some guidance here? There are other cases with similarly compressed time spans, Your Honor. However, there are no cases that clearly establish that... Well, I'm not asking for clearly established. I'm just asking for a case that supports your position that is factually analogous and having a compressed time span. But what's your best case? Well, Your Honor, first of all, I would point out that it is the plaintiff's obligation under... I understand that. I'm asking you, have you got a good case to establish? There is a good case written by a Judge Matheson, Crittenden v. City of Toluca, that basically said, I'm paraphrasing, that although a suspect did not actually possess a gun, the rapidly evolving circumstances justified the shooting. And that's a 2019 unpublished case. Have you got a published case that's factually analogous? I know the plaintiff has the burden on clearly established law, but I'm just asking you this question. Have you got an answer? Your Honor, I do not have a case with all of these facts with a time-sensitive nature. However, there are other cases, for instance, that we've cited in our brief. For instance, Phillips v. James, which is a 10th Circuit case from 2005, where, again, the suspect did not have a gun, but the officers were reasonable during the circumstances to have believed that he was a danger nonetheless. How much time is enough time? What if 20 seconds had elapsed after Mr. Valverde had dropped his weapon and put his hands up? Your Honor, there is a hazy border between reasonable force and unreasonable force. I think the longer the time that elapses, the more you get past the hazy border. But once you're in the hazy border, that's qualified immunity land. And under this very restricted time frame, there is no doubt that the reasonableness of Sergeant Dodge's actions when he saw Mr. Valverde pull the gun. Thank you. Judge Carson? Yes, thank you. Counsel... Well, my question is escaping me, but it's going to come back. Um... How... Is there anything in the record indicating that the officers noticed his gun before he started pulling it out? There is none, Your Honor. There are facts in the record that they knew Mr. Valverde had sold weapons to the same undercover officer who was taking part in this by-bus undercover operation. There is no indication in the record that anyone noted a gun in his pocket or in the waistband. Okay, so he's not pulling the gun out because he was ordered to do so. There is nothing in the record indicating that he was ever ordered to pull a weapon out of his waistband. Okay, and have you timed it from when he reached down to pull the weapon out till the first shot was fired? Your Honor, that, from our estimation of the recording, is milliseconds. It truly is milliseconds. It's very incredibly quick, but, you know, it's a second, maybe? I was going to say, because, I mean, my viewing of the video, and I just want to make sure everybody agrees with the way I see it, is that from the time he reaches to pull the weapon out until the time that the first shot is fired is right around one second. Correct, Your Honor, that is how we view it as well. Is that at least close? Yes. Okay. And, Your Honors, unless there are any further questions, I would like to reserve the remainder of my time for rebuttal. Any questions, Judge Matheson? Nothing further. Okay, yes, go ahead, and Mr. Valenzuela, would you please proceed? Good morning, Your Honors. Eric Valenzuela on behalf of the Atelier Isabel Padilla. First, I'd like to thank you for hearing this matter, especially in everything in light that's going on right now. So I wanted to say thank you. One of the things that I wanted to start with was to reiterate, this was a plan that was concocted by the law enforcement officers, including Dodge. This was not a 911 emergency call. This was not a 911 call for a guy with a gun. This was a plan that they had concocted, which makes the following, the tactical plan, all that more important. Now, with regards to Sergeant Dodge, I wanted to point out that Sergeant Dodge did not say in his initial interview, and this is citing from the record of Appellant Appendix 462 through 467, Sergeant Dodge did not say in his initial interview, well, he reached in his waistband for the gun, so I made the decision to fire at that point, but then I couldn't see what he was doing, and I may have been mistaken that I had shot him. If you read what Dodge says in his initial interview, he's very clear. He says, this individual pulls a gun out, the muzzle of the gun is coming up, being pointed at me. I begin to fire. The individual falls, begins to fall to the ground and falls to the ground, and after falling to the ground, the gun pops out, and at that point I realize that he's not a threat. This whole thing about, well, he decided to shoot and then he couldn't change his mind, that's something that was first introduced in 2018, over four years after this incident had first begun. So I just wanted to clarify that, that that is what was initially said in his initial interview, which is somewhat surprising considering he had the opportunity to view the video prior to giving the interview, and I think shows he was taking advantage of the fact that the individual most likely to contradict the story had been killed during the incident. So I wanted to reiterate that this was a plan concocted by them, and so it made the following of the tactical plan all that more important. Now, the analysis doesn't begin and end with simply reaching for a gun in the waistband. Under the totality of the circumstances analysis, you need to take everything into consideration. You need to take into consideration that they had expected this individual to be armed during this transaction. He had told them that he had a weapon when he had previously sold them some assault weapons and some automatic weapons, and they expected that he would be armed during this incident. It is not uncommon for individuals to try to discard drugs or discard guns, and officers are trained for such occurrence, and in fact Dodge himself had previously indicated that he has seen people in the past discard weapons. Another thing that I would like to point to is during Dodge's deposition, he conceded if this individual had discarded his gun and put his hands up in the area of compliance, that he would not be a threat and it would be inappropriate to use deadly force under those circumstances, and that's in appellant's appendix 514 through 516. There was a, I'm sorry, go ahead. Yes, Mr. Valenzuela, let me ask the first question. If the officer in this episode sees the suspect, who is known to have dealt in guns, pull a gun out of his pocket, just sees him with his hand on his gun right next to the pocket, is it clearly established that the officer can't at that time decide to shoot? I would say... Or is it clearly established that you have to wait to see whether the suspect is going to discard the gun or shoot? I mean, do you have to wait until that is clear before you can shoot? Under some circumstances. It depends on the circumstances, Your Honor. I would say under this circumstances, it would be clearly established. Now, the case... It would be that the officer has to wait to see if the suspect is going to fire the gun or drop it? Under, you know, there's case law, and I think this is what you're getting at. There's case law that says, you know, they do not have to wait for the glint of the steel, or they do not have to wait for the gun to be pointed at them, or they do not have to wait to be shot at. But those lines of cases are when an individual still has a gun on them or is reaching for a gun. I would submit to you, Your Honor, that those line of cases do not apply  But at one point, he's got his hand on...he puts his hand in his pocket and he pulls the gun out, and at that point, if the officer sees the gun, is it unconstitutional? Is it clearly established that it's unconstitutional to fire at that point? I believe under these circumstances, it would be, Your Honor. Because there's a lot of line of cases that specifically hold that having a weapon does not make it reasonable, per se, to shoot an individual. There's a lot of line of cases, and they're cited in the brief, for example. There's cases where if an individual has a shotgun, but it's pointed at the ground, and you don't give him commands to drop the weapon, and you shoot him without warning that it would be unreasonable to shoot him under those circumstances. There's other line of cases that say if you're armed at some point, but then you discard the gun and you're surrendering and complying, that it would be unreasonable to shoot him at that point. Having a weapon does not give an officer an unfettered reason to shoot an individual. But pulling out a weapon, the officer would have to decide, is he pulling that out of his pocket so he can toss it, or is he pulling it out of his pocket to shoot somebody? And you're saying that the officer has to wait to see. Is that what you're saying? If he shot him during that process, Your Honor, that would be a different analysis. I want to be very clear that Mr. Valverde was not shot while he was reaching for his waistband. Mr. Valverde was not shot while he was removing a gun from his waistband. Mr. Valverde was not shot prior to discarding a gun on the ground. Now, I would concede that.  I would have an even shorter period than Judge Carson perceived, but it looks like when you take into account reaction time, he had, if that's half a second, three-quarters of a second, I don't know that they used an automobile accident, there was very little time for him to have reacted before he fired after seeing the gun. It seemed to me almost instantaneous. Maybe that shows how slow my reaction time is. But the judge talked about a couple seconds and he had tossed the gun before he was shot, and that's just not how I see the video. But go ahead and respond because maybe you can explain what I'm missing. Yes. With regard to the discarding of the gun, like I said, he wasn't shot. I'd submit to you that the action of removing the gun from the waistband and discarding it onto the ground was one single action, Your Honor. He did not remove the gun from the waistband, hold it in his hand, and hesitate. What do I do? Do I toss it, you know, and deliberate for a moment? No. The removing of the gun and discarding it onto the ground was in one single motion, Your Honor. And under those circumstances, now the analysis is supposed to be what would a reasonable officer on scene have done? We know what a reasonable officer on scene would have done. We had five reasonable officers who were on scene at the time, so we don't need to speculate as to this. There were five additional officers who were reasonable, who were on scene facing the same circumstances, and they did not fire a single shot. Now, I think it's important to reiterate that the officer, Sergeant Dodge's own recklessness, is part of what precipitated his mistaken belief for needing to use deadly force. Now, you know, there was a well-designed tactical plan, and as part of the tactical plan, Sergeant Dodge's primary assignment was to be the driver and the less than lethal 40-millimeter. There were four additional officers that were the actual contact officers. They're two two-man teams. This team has a contact and a lethal officer, and both of these teams, per the tactical plan, they both approach from each side, and then they give him commands, and then, you know, based on what he does, they react accordingly. I would submit to you that Officer Dodge is completely disregard for the tactical plan, jumping out of the van and running directly at him when they pull up in an unmarked van, when they're wearing uniforms that are not your traditional officer uniforms, when they never identify themselves as police officers, when he fires without giving a command to drop the weapon, when he fires without giving any kind of warning, was extremely reckless and precipitated the mistaken belief that Dodge had that he needed to use deadly force. And I would submit to you five reasonable officers who were also on scene did not make that mistake, which shows what a reasonable officer on scene would have done. Judge Matheson? Counsel, I'm interested in your addressing further the compressed timeframe situation here. And, of course, we have two prongs for qualified immunity, and I'm particularly interested in your giving us a Supreme Court or a Tenth Circuit case that supports you with a similar compressed time span. I would submit to you that in the district court's finding that Officer Dodge was not entitled to qualified immunity, that they focused on the weight of authority from the sister circuits. That was the focus of the analysis. I have not seen a Supreme Court or a Tenth Circuit case where an individual voluntarily discharges a gun onto the ground, the officers tell him to put his hands up and get on the ground, and he complies and is shot. I haven't seen that fact.  Whether we're talking about three seconds, one second, six seconds, we are talking about a very brief period of time, and I think that was really driving the appellant's argument this morning. I need to hear what you have to say about that. I wouldn't disagree, Your Honor, that it was a brief, short period of time, but this would be my response. It was enough time for them to perceive that he had discarded the gun and wasn't trying to shoot anybody or injure anybody with it. And the reason I come to that conclusion is because there were five other people who were on scene that were able to make that perception that he wasn't trying to injure anybody. So I would submit to you that, yes, it was a brief amount of time, but it was enough time to come to the conclusion that he wasn't trying to harm anyone or shoot anybody, which is supported, at least reasonable to infer, and circumstantially by the fact that no other officer on scene had fired, and I believe the jury could also reach that conclusion based on the evidence, including the video. Okay. Let me make sure I understand the argument then. Based on what you just said, I take it you would argue that that shows the officer acted unreasonably under the Graham factors, and that would give you a prong one constitutional violation, and as to clearly established law, you're relying on out-of-circuit weight of authority. Is that correct? Yes, Your Honor, because I have not been able to. There's some in-circuit authority, whether that's Allen, Muskegee, or whether that's Walker v. City of Orem, where they discussed, I think in the Allen case, the individual even pointed a gun at the officers, and they found that it was their reckless behavior leading up to it that precluded them from finding that the use of force was reasonable.  It turned out to be a box cutter, but I have not seen a case within the Tenth Circuit that specifically addresses this, but there is a whole weight of authority from the outside circuits that have addressed this, including, you know, I anticipate that the question will be asked, well, what's your best case most factually similar? And I would point to the court to the Hemphill v. Schott case, which is out of the Second Circuit, in which an individual that was published in 1998, and that is a case where an individual was specifically asked to put his hands up, and he was shot under those circumstances, and they found that that would clearly be unreasonable. That would be, I think, the case that I came across that was most factually similar to what we have here. Judge Carson? Oh, I don't think I have any questions. Thanks. Do you have another minute or more if you'd like to? Yes, I would just briefly, Your Honor. I would like to, you know, discuss the fact that, you know, no command was given to, you know, drop the weapon. Officers are trained that if you see someone with the weapon, you're supposed to give a command and give them opportunity to comply with the command. Here it's undisputed he was given the command to put his hands up and to get on the ground, and if you look at that video, you can clearly see him put his hands up before he's shot, and you also see him going to the ground, and he's shot while he's going to the ground and while he's on the ground. It's no coincidence that the officers commanded him to put his hands up and get on the ground and that the video shows him putting his hands up and going to the ground when the shooting begins. Also, I would submit that they have to take every single shot into consideration, and clearly from especially the enhanced video, some of those shots are occurring while he's going to the ground and already on the ground. And based on the distance between the officer and the decedent and being broad daylight out, he should have been able to perceive that the individual no longer had a weapon in his hand, as the other officers were able to. And the fact that the other officers didn't even know that he had gotten out of the van or who was shooting, I think further supports how reckless Sergeant Dodge's conduct was. Thank you, counsel. Thank you, Your Honor. Ms. Horne, you have a little time left. Your Honor, yes, thank you. It is undisputed that Mr. Valverde pulled a gun out of his pocket as he was being arrested. That in and of itself gave, under these circumstances, gave Sergeant Dodge a probable cause to believe he was a threat to him and the other officers surrounding him. As to opposing counsel's argument that the other officers not shooting proves that Sergeant Dodge was unreasonable in his decision to shoot, if you look at the video, only Sergeant Dodge was in the exact position he was. The fact that the other officers didn't shoot, considering that they are in other positions than Sergeant Dodge, doesn't give effect to the fact that you're supposed to consider these cases from the viewpoint of a reasonable officer of the scene in counting the same circumstances. Only Sergeant Dodge... Let me ask about that, counsel. So, they would not have been able to see the gun in Valverde's hands? Your Honor, as you can see from the video, they're coming around, depending on which officer you're talking about, they're coming around different cars from different directions. There is evidence in the record that wasn't taken into account by the district court that some other officers did, in fact, see the gun, yelled to the other officers that there was a gun, but only Sergeant Dodge was in the position to shoot. So, it's not true, as counsel argued, that the other officers didn't see a threat. What is true is the other officers did not have the opportunity to shoot, and Sergeant Dodge did. Let me ask another question that was raised by Mr. Valenzuela. What about a claim that this happened because Dodge was reckless? Dodge was reckless in the way he approached the situation? One of these cases where it may be that liability is based not because of the actual use of force, at that time there might have been a clear danger, but that the officer was responsible for creating the dangerous situation through reckless conduct. How do you respond to that? Would that issue raise below, for example? Your Honor, the fact that Sergeant Dodge deviated from the tactical plan does not equate to reckless behavior. He was in charge of driving the van, and his testimony is that when he came up on the scene, he looked at Mr. Valverde and had the gut feeling that he was going to fight. He instead of coming out of the van with a 40mm less than lethal weapon, which was his position under the plan, he instead chose his gun. That Sergeant Dodge was prepared to respond to a forceful action by Mr. Valverde doesn't mean that he recklessly caused the forceful reaction by Mr. Valverde. There is nothing from Sergeant Dodge's actions that caused Mr. Valverde to pull the gun out of his pocket. Was recklessness argued below? Was that one of the arguments? That was in the summary judgment motion argued by opposing counsel, yes. Your time is up, but Judge Matheson, do you have any questions? No, thank you. Judge Carson? I don't have any, thank you. Thank you, Your Honor. Thank you. Thank you, Your Honor.